RICHARD G. McCRACKEN, SBN 2748
KRISTIN L. MARTIN, SBN 7807
PAUL L. MORE, SBN 9628
McCRACKEN, STEMERMAN & HOLSBERRY
1630 S. Commerce Street, Suite A-1
Las Vegas, Nevada 89102
Tel. No.:       (702) 386-5107
Fax No.:      (702) 386-5132
E-mail:        rmccracken@dcbsf.com
                   klm@dcbsf.com
                   pmore@dcbsf.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TRUMP RUFFIN COMMERCIAL LLC, and TRUMP RUFFIN TOWER I LLC,<br><br>       Plaintiff,<br><br>  vs.<br><br>LOCAL JOINT EXECUTIVE BOARD LAS VEGAS, CULINARY WORKERS UNION LOCAL 226, and BARTENDERS UNION LOCAL 165,<br><br>       Defendants. | CASE NO. 2:15-cv-01984-GMN-GWF<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT [FRCP 12(b)(6)]** |

**Table of Contents**

Introduction ..................................................................................................................................... 1

Statement of Issues ......................................................................................................................... 2

Statement of Relevant Complaint Allegations ............................................................................... 2

Argument ........................................................................................................................................ 4

    A.  The Complaint fails to state a claim for false advertising in violation of the Lanham Act ................................................................................................................................. 4

        1.  Plaintiffs lack standing to bring a false advertising claim because they are not in commercial competition with the Unions ................................................................... 5

        2.  The Flyer is not "commercial advertising or promotion" ............................................ 6

        3.  The Flyer does not contain any factual misrepresentations about the Trump Hotel's services ........................................................................................................... 8

    B.  The Court should decline to exercise supplemental jurisdiction over the Nevada Deceptive Trade Practices Act claim ....................................................................................... 9

    C.  Plaintiffs have not stated a claim for violation of Nevada's Deceptive Trade Practices Act ............................................................................................................................... 11

Conclusion ................................................................................................................................... 14

Defendants Local Joint Executive Board of Las Vegas, Culinary Workers Union Local 226 and Bartenders Union Local 165 (hereinafter, "Defendants" or "the Unions") move to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

**Introduction**

This case is an attempt to create a federal false advertising claim out of an allegedly false statement about where Republican presidential candidate Donald Trump "stayed" when he was in Las Vegas to give a speech in connection with his campaign.  The statement about Trump's whereabouts was not made by any of Trump's business competitors.  It was made by labor unions that are trying to unionize employees of the Trump Hotel in Las Vegas.  The labor unions did not say anything about the quality of accommodations or other services offered by the Trump Hotel or the Treasure Island Hotel, where Trump gave his speech.  The labor unions merely announced that the Treasure Island Hotel workers are unionized and earn better wages that the Trump Hotel workers.  The federal false advertising claim should be dismissed because the Complaint does not allege key elements of a Lanham Act false advertising claim: the parties are not commercial competitors; the allegedly false statement about where Trump stayed was not intended to persuade consumers to buy hotel services from the labor unions; and there is no allegation that the Unions misrepresented a specific characteristic of the Trump Hotel's services.

If the Court dismisses the Lanham Act claim, it should also dismiss the only other claim in this case, which is for violation of the Nevada Deceptive Trade Practices Act.  Supplemental jurisdiction does not exist if the Court concludes that the Lanham Act was absolutely devoid of merit and, in any event, the Court has discretion to decline to exercise supplemental jurisdiction if no federal claims remain in the case.  If the Court exercises supplemental jurisdiction, the Nevada Deceptive Trade Practices claim should still be dismissed because the Complaint's factual allegations do not amount to a violation and because the speech at issue was not commercial speech.

//

**Statement of Issues**

1. Do Plaintiffs have standing to sue the Unions for false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)?

2. Should Count I for false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), be dismissed because Plaintiff failed to allege a misrepresentation in commercial advertising or promotion?

3. Alternatively, should Count I for false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), be dismissed because there is no allegation that Defendants made a specific misrepresentation about Plaintiffs' services?

4. If Count I for violation of the Lanham Act is dismissed, should the Court decline to exercise supplemental jurisdiction over Count II because it arises under Nevada law?

5. Should Count II for violation of Nevada's Deceptive Trade Practices Act, NRS 598.0915(5) and (8), be dismissed because the factual allegations in the Complaint do not amount to a violation of that statute?

**Statement of Relevant Complaint Allegations**

Plaintiffs are two corporations that own and operate the Trump Hotel Las Vegas, which has a reputation as a luxury hotel. Complaint, ¶¶ 4, 5, 7. Donald Trump is an owner of the Trump Hotel. Complaint, ¶ 8. Trump also owns the "TRUMP" trademark, which he licenses to the Trump Hotel. Complaint, ¶ 9. On October 8, 2015, during a visit to Las Vegas, Trump gave a speech related to his presidential campaign. Complaint, ¶¶ 11-12. The Trump Hotel did not have a large enough space to host the event, so Trump gave the speech at the Treasure Island Hotel. Complaint, ¶ 11. Plaintiffs allege that Trump "stayed" at the Trump Hotel during his visit to Las Vegas on October 7 to 8, by which Plaintiffs mean that Trump "stay[ed] overnight" at the Trump Hotel on October 7. Complaint, ¶¶ 10, 14, 15.

Defendant Unions are attempting to unionize the workforce at the Trump Hotel. Complaint, ¶¶ 6, 12. The dispute over unionization has prompted competing claims about employee support for unionizing. The Unions have asserted that over 500 Trump employees are

seeking to unionize, but Plaintiffs allege that many Trump employees are not in favor of unionizing. Complaint, ¶ 12. In connection with the labor dispute, the Unions circulated a flyer (the "Flyer") containing the following text:

**When Donald Trump stays in Las Vegas, he stays at a UNION hotel!**

> Donald Trump is in Las Vegas this evening. Even though he owns a hotel here, he is staying at the Treasure Island Hotel & Casino (TI). Workers at the TI are members of the Culinary Union. They make an average of $3.33 more per hour than Trump workers, have affordable health insurance, and a secure retirement.
>
> Meanwhile, Donald Trump has refused to agree to a fair process for workers at his hotel to form a union.
>
> If Trump chooses to stay in a union hotel, why can't Trump Hotel workers choose to form a union?

**Make America Great Again: Start Here!**

> Talk to your committee leaders about your right to participate in Union activities. Text "Trump" to 877-877 to get text message updates about the campaign.

Complaint, ¶ 13 & Exh. A. The Flyer contains a photograph of a people carrying picket signs with the words "No Contract No Peace" and a banner reading "MAKE AMERICA GREAT AGAIN! MR. TRUMP, START HERE." The Flyer also contains the Unions' names and logos. *Id.*

Plaintiffs allege that the Flyer "falsely stated that Mr. Trump stayed at the Treasure Island Hotel on October 8, 2015, and not Trump Hotel Las Vegas." Complaint, ¶ 13. Plaintiffs' theory is that by publishing the Flyer, "Defendants communicated to the public that the quality of the accommodations of Trump Hotel Las Vegas was not 'good enough' for Mr. Trump, such that he personally chose to stay at another property in Las Vegas and not Trump Hotel Las Vegas." Complaint, ¶ 15.

# Argument

**A.   The Complaint fails to state a claim for false advertising in violation of the Lanham Act**

Count 1 of the Complaint is for "false advertising" in violation of Section 43(a)(1)(B) if the Lanham Act, 15 U.S.C. § 1125(a).  Complaint, ¶ 24.  Section 43(a)(1) provides:

> (1)  Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  Only subsection (B) -- the "false advertising" prohibition -- is at issue in this case.[1]

---

[1] Section 43(a)(1) provides two bases for liability: (1) false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ("false association"), and (2) false representations in advertising concerning the qualities of goods or services ("false advertising"). *Waits v. Frito-Lay*, 978 F.2d 1093, 1108 (9th Cir. 1992).  A typical "false association" claim involves the defendant's use of a mark that is confusingly similar to the plaintiff's established mark, or the defendant's attempt to pass off its goods as those of the plaintiff.  3 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 27.02[3] (3d ed. 1996); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 208 (9th Cir. 1989).  Plaintiffs do not claim that the Unions used the Trump mark or otherwise caused confusion that their goods or services were those of the Trump Hotel.

### 1. Plaintiffs lack standing to bring a false advertising claim because they are not in commercial competition with the Unions

The Lanham Act does not create a general federal tort of misrepresentation. A false advertising claim may be brought only against commercial competitors to remedy competitive injury. *Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213, 1214 (9th Cir. 1987); *see also Waits*, 978 F.2d at 1109 ("[W]here the misrepresentation simply concerns a product's qualities, it is actionable under section 43(a) only insofar the Lanham Act's . . . purpose of preventing 'unfair competition' is observed. . . . [A] discernibly competitive injury must be alleged."). A false advertising plaintiff must allege "(1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network of Northern Cal. v. American Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005).

The false advertising claim in this case should be dismissed because Plaintiffs do not, and cannot, allege that they compete for business with the Unions. The Unions are trying to organize Plaintiffs' employees to support and join their organizations, not competing with Plaintiffs to sell hotel rooms to consumers.

Plaintiffs allege that the Unions' objective in circulating the Flyer was to damage the Trump Hotel's reputation, Complaint, ¶ 13; but a union's exertion of economic pressure on a company, even if for the purpose of accomplishing an objective in the labor dispute, does not make a union a commercial competitor of that company. *Sodexho USA, Inc. v. Hotel & Restaurant Employees and Bartenders Union Local 217*, 989 F.Supp. 169, 172 (D. Conn. 1997); *see also Cellco Partnership v. Communications Workers of America*, 2003 WL 25888375, at *5 (D.N.J. Dec. 11, 2003) ("That the CWA's speech has a commercial impact on Verizon – and was intended by the CWA to have such an impact – is without question. Contrary to [the plaintiff's] assertion, this does not mean that the CWA's use of its slogan falls with that range of speech, whether characterized as 'commercial' or not, that the Lanham Act covers.").

//

1    It is not enough that the parties have opposing interests.  If the defendant is not the
plaintiff's <u>commercial</u> competitor, Lanham Act standing does not exist.  *See, e.g.*, *Jack Russell Terrier Network*, 407 F.3d at 1037 (dismissing claim by regional dog club and its members against national dog club based on advertisement implying that plaintiffs' dogs were inferior because plaintiffs did not compete with the national dog club); *Halicki*, 812 F.2d at 1214 (dismissing claim by film producer against film distributor based on inaccurate film rating because parties were in a contractual relationship, not in competition with each other).

### 2. The Flyer is not "commercial advertising or promotion"

A threshold requirement of Section 43(a)(1)(B) is that the misrepresentation occur in "commercial advertising or promotion."[2]  The allegedly false statement about where Trump "stayed" was made "in commercial advertising or promotion."

"To constitute commercial advertising or promotion, a statement of fact must be: (1) commercial speech; (2) by the defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services." *Newcal Industries*, 513 F.3d at 1054; *see also Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003).  "[C]ommercial speech is 'speech which does no more than propose a commercial transaction.'" *Id.* at 1181 (citing *City of Cincinnati v Discovery Network, Inc.*, 507 U.S. 410, 422 (1993)).  The Complaint does not even come close to alleging that that the Flyer was "commercial advertising or promotion."  As explained in the preceding section, the parties are

---

[2] A prima facie case for false advertising in violation of the Lanham Act, has six elements: "(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product." *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008).

not commercial competitors. Moreover, the Flyer does not propose a commercial transaction, or even suggest that the Unions have any goods or services for sale.

The allegations in *Sodexho USA* are similar to those in Plaintiffs' Complaint. As here, the plaintiff was an employer whose employees the defendant union was attempting to unionize. The employer sued the union under the Lanham Act's false advertising provision based on the Union's distribution of allegedly false and misleading leaflets and letters, which the employer characterized as a "smear campaign." While Plaintiffs here allege only that the Flyer has the tendency to harm the Trump Hotel's reputation, Complaint, ¶ 13; the employer in *Sodexho USA* alleged that the union's publications actually caused it to lose a contractual opportunity. 989 F.Supp. at 171. The *Sodexho USA* court dismissed the claim because the union's "'smear' campaign was not carried out 'in commercial advertising or promotion.'" *Id.* The court explained:

> [T]he communications at issue in this case do not fit within the Lanham Act commercial speech rubric. Taken in any light, defendants' actions could not have been intended to redirect consumers of plaintiff's services to defendants' products or services. Whatever the defendants' services are (presumably the service they offer as representatives of union members), these services are not in commercial competition with the plaintiff's services (institutional food service). While defendants' actions may have been intended to encourage customers to choose a food service provider other than Sodexho, they were not intended to cause consumers to choose the defendant unions themselves as the food service providers. In order to constitute "commercial speech" as intended by § 43(a) of the Lanham Act, the challenged conduct does not only require disparagement of a service or product, it additionally requires that the defendant do so in order to promote its own service or product.

*Id.* The reasoning in *Sodexho USA* applies with equal force to this case.[3]

---

[3] Commercial activity is also a prerequisite for a "false association" claim and, as a result, courts have dismissed claims against unions for using a company's mark to gain an advantage in a labor dispute. *See Cellco Partnership*, 2003 WL 25888375, at *3-4; *WHS Entertainment Ventures v. United Paperworkers Union*, 997 F.Supp. 946, 949-51 (M.D. Tenn. 1998). More generally, courts hold that Section 43(a) does not extend to noncommercial uses of trademarks. *See*

7

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
CASE NO. 2:15-cv-01984-GMN-GWF

### 3. The Flyer does not contain any factual misrepresentations about the Trump Hotel's services

Plaintiffs' claim hinges on a single alleged misrepresentation in the Flyer: that the statement that Trump "is staying at the Treasure Island Hotel" is false because Trump stayed overnight on October 7 at the Trump Hotel. Whether the alleged misrepresentation on the Flyer states a claim under the Lanham Act may be resolved on a Rule 12(b)(6) motion. *Newcal Industries*, 513 F.3d at 1053; *see also Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Service Inc.*, 911 F.2d 242, 245 (9th Cir. 1990).

On its own, the Flyer's statement about where Trump stayed does not make any representation – true or false -- about the "nature, characteristic, [or] qualities" of accommodations at the Trump Hotel, which is what Section 43(a)(1)(B) of the Lanham Act requires. Plaintiffs' theory is instead that by misrepresenting where Trump "stay[ed]", the Unions "communicated to the public that the quality of accommodations of the Trump Hotel Las Vegas was not 'good enough' for Mr. Trump." Complaint, ¶ 15. The problem with this theory is that "[a]dvertising which merely states in general terms that one product is superior is not actionable." *Cook, Perkiss*, 911 F.2d at 246.

The Ninth Circuit holds that a false statement is not actionable if it "is extremely unlikely to induce consumer reliance" because it is subjective or general: "[A] statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery." *Newcal Industries*, 513 F.3d at 1053. The *Cook, Perkiss* Court demonstrated this distinction with an example: a statement that lamps were far brighter than any other lamps is puffery, while a statement that quantified the superior brightness in with statements such as "35,000 candle power and 10-hour life" are actionable. 911 F.2d at 246.

---

*Radiance Foundation, Inc. v. NAACP*, 786 F.3d 316, 322 (4th Cir. 2015); *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 676-77 (9th Cir. 2005); *International Assn. of Machinists & Aerospace Workers v. Winship Green Nursing Center*, 103 F.3d 196, 209 (1st Cir. 1996) (concurring opinion of J. Saris).

8
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
CASE NO. 2:15-cv-01984-GMN-GWF

1  Thus, claims based on assertions that a defendant would "lower costs" or charge less than
2  competitors or that the competitor was "too small " to handle business have all been dismissed as
3  puffery on which consumers would not reasonably rely.  *Newcal Industries*, 513 F.3d at 1053;
4  *Cook, Perkiss*, 911 F.2d at 246; *Coastal Abstract Svc., Inc. v. First American Title Ins. Co.*, 173
5  F.3d 725, 731 (9th Cir. 1999).

6       Plaintiffs' suggestion that consumers would rely on the Flyer as a factual representation
7  about the quality of accommodations at the Trump Hotel is frivolous.  The full text of the Flyer
8  is before the Court, as it is attached as Exhibit A to the Complaint.  The Flyer does not make any
9  specific or quantifiable statements about the Trump Hotel's services.  The Flyer does not say that
10 the Trump Hotel was not "good enough" or use the phrase "good enough" at all.  Readers would
11 have to draw that inference, even though it is not obvious or logical.  The Flyer does not give any
12 reason why Trump chose to stay at the Treasure Island Hotel, or make any comment about the
13 quality of accommodations at the Trump Hotel, either directly or by comparison to the Treasure
14 Island Hotel.  The only comparison that the Flyer makes between the Trump Hotel and the
15 Treasure Island Hotel is not about the services the hotels sell to the public, but about how the
16 hotels treat their employees.  According to the Flyer, employees at the Treasure Island Hotel are
17 unionized, have higher wages, affordable health insurance and a secure retirement, while Trump
18 has refused to allow employees at the Trump Hotel to unionize through a fair process.  These
19 statements are specific, but Plaintiffs do not allege that these statements misrepresent the truth.

20 **B.     The Court should decline to exercise supplemental jurisdiction over the Nevada
21            Deceptive Trade Practices Act claim**

22       Count II alleges a violation of Nevada law only.  Complaint, ¶¶ 27-32.  If the Lanham
23 Act claim is dismissed, the Court should decline to exercise supplemental jurisdiction over this
24 claim.

25       Supplemental jurisdiction is the only basis alleged in the Complaint for federal
26 jurisdiction over the state law claim.  Complaint, ¶ 1.  If the Court determines that the Lanham
27 Act claim was "absolutely devoid of merit," then the Court lacks supplemental jurisdiction and
28

must dismiss the state law claim. *In re Nucorp Energy Secutities Litig.*, 772 F.2d 1486, 1490 (9th Cir. 1985). But even without making that finding, the Court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Decisions by the Ninth Circuit "upholding the exercise of discretion under § 1367(c)(3) have all involved dismissals for failure to state a claim or a grant of summary judgment to the defendant on the federal claim. In each case, [the Ninth Circuit] held that it was appropriate for the district court to decline jurisdiction over the supplemental state claims because the federal claim had proven to be unfounded." *Trustees of the Construction Industry v. Desert Valley Landscape & Maintenance, Inc.*, 333 F.3d 923, 926 (9th Cir. 2003) (internal citations omitted). *See, e.g.*, *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (holding that district court did not abuse discretion by declining to exercise jurisdiction over state law claims after dismissing all federal claims); *Ove v. Gwinn,* 264 F.3d 817, 821 (9th Cir. 2001) (same); *O'Connor v. State of Nevada*, 27 F.3d 357, 363 (9th Cir. 1994) (same).

This is exactly the type of case in which supplemental jurisdiction over a state law claim should be declined. The case is at the very beginning stage. No discovery has been conducted or motions have been heard by the Court (other than the present motion). Without the Lanham Act claim before it, there is no reason for the Court to decide the state law issue. *Cf. Cook, Perkiss*, 911 F.2d at 247 (upholding dismissal of pendant state law claims following dismissal of Lanham Act claims); *WHS Entertainment Ventures*, 997 F.Supp. at 954-55 (same); *Sodexho USA*, 989 F.Supp. at 73 (same).

**C.      Plaintiffs have not stated a claim for violation of Nevada's Deceptive Trade Practices Act**

If the Court decides to exercise supplemental jurisdiction over Count II, it should also dismiss that claim.  Plaintiffs allege that the same allegedly false statement – that Trump stayed at the Treasure Island Hotel – violates two subsections of Nevada's Deceptive Trade Practices Act, NRS 598.0903 *et seq*.  NRS 598.0915 states:

> A person engages in a "deceptive trade practice" if, in the course of his or her business or occupation, he or she:
>
>        *  *  *
>
>     5.    Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith.
>
>        *  *  *
>
>     8.    Disparages the goods, services or business of another person by false or misleading representation of fact.

Plaintiffs merely recite the language of NRS 598.0915(5) and (8) when they allege that the Flyer's statement is "(a) a false representation as to the characteristics and quality of the Trump Hotel Las Vegas; (b) a false representation as to the sponsorship, approval, affiliation or connection of a person therewith; and (c) a false or misleading representation of fact that disparages the goods, services or business of another person."  Complaint, ¶ 28.  The Deceptive Trade Practices Act claim should be dismissed for two reasons.

First, Plaintiffs have not alleged any facts to support the conclusory allegations in paragraph 28 that the Unions violated NRS 598.0915(5) or (8) by publishing the Flyer.  The Court does not need to accept the allegations in paragraph 28 as fact because they are nothing more than "legal conclusion[s] couched as factual allegation[s]."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he

11
MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT
CASE NO. 2:15-cv-01984-GMN-GWF

tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). The allegedly false statement about where Trump "stayed" does not amount to a representation that Trump sponsors, approves of, or has any other connection with the Treasure Island Hotel, other than as a consumer. Moreover, as explained in Section A.3 of this Brief, the Flyer does not make any factual assertions about the characteristics or qualities of the Trump Hotel or disparage the Trump Hotel's goods, services or business.

Second, NRS 598.0915 is expressly limited to statements made in the course the speaker's "business or occupation." Plaintiffs might contend that that limitation does not preclude this suit because the Flyer was published in the course of a labor dispute which is the Unions' "business or occupation." The Court should construe NRS 598.0915 more narrowly because a broad construction would risk penalizing speech that the First Amendment protects.[4] *See DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problem unless such a construction is plainly contrary to the intent of Congress.").

Federal courts have construed a phrase in Section 43(a)(1) ("in connection with any goods or services") to limit the Lanham Act's reach to commercial speech:

> The danger of allowing the "in connection with" element to suck in speech on political and social issues though some strained or tangential association with a commercial or transactional activity should be evident. Courts have uniformly understood that imposing liability under the Lanham Act for such speech is rife with the First Amendment problems.

---

[4] Speech by unions in the context of a labor dispute has been afforded broad protection by the Supreme Court to avoid interfering with the National Labor Relations Board's primary jurisdiction and some misrepresentation is protected against regulation by state law. *Old Dominion Branch No. 496 National Assn. of Letter Carriers v. Austin*, 418 U.S. 264, 281 (1974); *Linn v. United Plant Guard Workers*, 383 U.S. 53, 58, 65 (1966).

*Radiance Foundation*, 786 F.3d at 332; *see also Wojnarowicz v. American Family Assn.*, 745 F.Supp. 130, 141 (S.D.N.Y. 1990) (stating that the Lanham Act "has never been applied to stifle criticism of the goods or services of another by one, such as a consumer advocate, who is not engaged in marketing or promoting a competitive product of service."). The Nevada courts have not had the opportunity to decide whether NRS 598.0915 applies to non-commercial speech, or whether the phrase "in the course of his or her business or occupation" is an implied limitation to commercial speech. Such a limitation would not be "plainly contrary" to the Nevada Legislature's intent. When the Legislature made the Nevada Deceptive Trade Practices Act privately enforceable, it defined violations as "consumer fraud," NRS 41.600(1) & (2)(e); which suggests that the Legislature intended that the statute reach consumer transactions only. *Cf. Erwin v. State*, 111 Nev. 1535, 1541, 908 P.2d 1367, 1371 (1995) (NRS Chp. 599B regulates only commercial aspects of speech because it is a consumer fraud statute).

If the Court construes NRS 598.0915's provisions that prohibit speech as limited to commercial speech, then Count II of the Complaint should be dismissed. Commercial speech is speech that "does not more than propose a commercial transaction." *City of Cincinnati*, 507 U.S. at 422. The Flyer does not propose a commercial transaction. It urges employees to organize, and union speech in furtherance of its organizing objectives is not commercial speech. *DeBartolo Corp.*, 485 U.S. at 576 (holding that handbills that "pressed the benefits of unionism to the community and the dangers of inadequate wages to the economy and the standard of living of the populace" "do not appear to be typical commercial speech such as advertising the price of a product or arguing its merits."). Since Plaintiffs have not alleged a misrepresentation in speech that proposes a commercial transaction, the Deceptive Trade Practices Act claim should be dismissed.

//
//
//
//

**Conclusion**

For all of the foregoing reasons, the Complaint should be dismissed in its entirety.

DATE: November 30, 2015                McCRACKEN STEMERMAN & HOLSBERRY

                                                    /s/ Kristin L. Martin
                                           RICHARD G. McCRACKEN, SBN 2748
                                           KRISTIN L. MARTIN, SBN 7807
                                           PAUL L. MORE, SBN 9628
                                           1630 S. Commerce Street, Suite A-1
                                           Las Vegas, Nevada 89102

                                           *Attorneys for Defendants*