JONATHAN W. FOUNTAIN
Nevada Bar No. 10351
JFountain@LRRlaw.com
**LEWIS ROCA ROTHGERBER LLP**
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169
Telephone: (702) 949-8200
Facsimile: (702) 949-8398

BART A. LAZAR
(Admitted *pro hac vice*)
blazar@seyfarth.com
**SEYFARTH SHAW LLP**
131 S. Dearborn
Suite 2400
Chicago, Illinois 60603
Telephone: (312) 460-5986
Facsimile:  (312) 460-7986

*Attorneys for Plaintiffs*
*Trump Ruffin Commercial LLC and*
*Trump Ruffin Tower I LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TRUMP RUFFIN COMMERCIAL LLC, and TRUMP RUFFIN TOWER I LLC<br><br>         Plaintiffs,<br>    v.<br><br>LOCAL JOINT EXECUTIVE BOARD LAS VEGAS, CULINARY WORKERS UNION LOCAL 226, and BARTENDERS UNION LOCAL 165,<br><br>         Defendants. | Case No.:  2:15-cv-01984-GMN-GWF<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiffs Trump Ruffin Commercial LLC and Trump Ruffin Tower I LLC (together "Plaintiffs") oppose Defendants' Local Joint Executive Board Las Vegas, Culinary Workers Union Local 226, and Bartenders Union Local 165 (together "Defendants' ") Motion to Dismiss the Complaint (Dkt. 15 ("Defendants' Motion")), as follows:

**PRELIMINARY STATEMENT**

In October 2015, in a blatant effort to drive business away from Plaintiffs' Trump Hotel Las Vegas (the "Hotel"), Defendants published the admittedly false statement that Plaintiffs' owner, Donald J. Trump, does not stay at the Hotel when he stays in Las Vegas (the "False Statement"). (*See* Dkt. 1 ("Complaint")). Defendants disseminated the False Statement by distributing a flyer featuring the False Statement as the headline (Complaint, Exhibit A), having the False Statement read on the Ralston Live television show on Las Vegas public broadcasting ("Vegas PBS"), and through the culinary union's website (Complaint, Exhibit B). The False Statement is not directed at any labor dispute – its only purpose being to assert that the Hotel is not good enough for its owner. Because Donald J. Trump's name is synonymous with fame, fortune and luxury, the insinuation that he would not stay at the Hotel clearly disparages the quality of the Hotel -- a five star hotel with a reputation for providing the highest quality facilities and services. This False Statement was made for no reason other than to harm Plaintiffs' business reputation. (Complaint, ¶¶ 7-8).

Upon learning of Defendants' publication of the False Statement, Plaintiffs requested that Defendants and Vegas PBS immediately cease further dissemination. Tellingly, within 48 hours of Plaintiffs' request, Vegas PBS complied and removed the False Statement from its web site. (Complaint, ¶17). Despite acknowledging that the False Statement was incorrect, however, Defendants opted not to retract the False Statement or engage in any effort to diminish the damage to the goodwill and reputation that the False Statement was designed to cause and has caused. (Complaint, ¶18).

As the False Statement is commercial speech, Defendants' actions in publishing and distributing the False Statement, thereby harming Plaintiffs' business reputation, is actionable under the Lanham Act and Nevada's Deceptive Trade Practices Act. Accordingly, Defendants' Motion must be denied.

# ARGUMENT

## I. Defendants' False Commercial Statement is Actionable Under the Lanham Act

### A. Legal standard

In considering whether the complaint is sufficient, the Court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the complaint must contain sufficient facts "to state a facially plausible claim to relief." *Conservation Force v. Salazar*, 646 F. 3d 1240, 1242 (9th Cir. 2011). While a "plausible claim" presents more than a "sheer possibility" the defendant acted unlawfully, the standard falls short of imposing a "probability requirement" upon the plaintiff. *Lacey v. Maricopa County*, 693 F. 3d 896, 911 (9th Cir. 2012).

Here, Plaintiffs' allegations far exceed the "plausible claim" standard. It is not unreasonable to conclude that the False Statement was, in fact, false when made, especially in light of Defendants' admission of the same. (*See* Complaint, ¶18.) It is also not implausible that the Defendants published the False Statement for the purpose of harming Plaintiffs' business reputation. Thus, Plaintiffs' complaint survives its pleading burden and Defendants' Motion must be denied.

### B. Unions are not immune from liability for false commercial statements

Defendants' argument that they (and all unions) are immune from liability for making false and/or deceptively misleading statements intended to hurt a business' commercial interests is flat out wrong. While a union's noncommercial speech related to labor issues may be protected, once a union crosses the line into commercial speech, that union can be held liable. *See San Antonio Cmty. Hosp. v. S. California Dist. Council of Carpenters*, 125 F.3d 1230, 1239 (9th Cir. 1997).

In *San Antonio Community Hospital*, the union displayed a banner stating "THIS MEDICAL FACILITY IS FULL OF RATS" near the hospital's construction site and the entrance to the hospital's maternity ward where it was visible to passersby. *Id.* at 1233. The trial court held, and the Ninth Circuit affirmed, that there was a high probability members of the public would be and actually were deceived by the union's use of the phrase because it falsely

1  and improperly implied that the hospital had rodent problems. *Id.* at 1236. The Ninth Circuit
2  found that the "language on the Union's banner crossed the line separating protected rhetorical
3  hyperbole from unprotected fraudulent misrepresentations." *Id*. at 1237.

4  Similarly, in *Intercity Maintenance Co. v. Local 254, Service Employees International
5  Union*, 241 F.3d 82, 90 (1st Cir. 2001), where the union distributed flyers stating that the
6  employer was "in violation of both federal and state laws and regulations," that it "expose[d] its
7  cleaners to chemical and biological hazards including HIV and Hepatitis B virus" and that it
8  "did not pay certain benefits or a living wage," the court held that an employer had an
9  actionable claim.

10  Other courts have also allowed claims against unions when the statements at issue are
11  alleged to be false and/or deceptively misleading statements about the employer and/or its
12  business. *See Mercy Health Servs. v. 1199 Health and Human Servs. Employees Union*, 888 F.
13  Supp. 828 (W.D. Mich. 1995) (holding union TV commercials regarding delivery of inadequate
14  care actionable); *Shepard v. Courtoise*, 115 F. Supp. 2d 1142, 1147 (E.D. Mo. 2000) (holding
15  union falsely asserted that plaintiff "abused" employees); *Briggs & Stratton Corp. v. Nat'l
16  Catholic Reporter Pub'g Co.*, 978 F. Supp. 1195 (E.D. Wis. 1997) (holding union falsely
17  implied that lay-offs related to religious affiliations); *Batson v. Shiflett*, 602 A.2d 1191 (Md.
18  1992) (holding union fliers falsely alleged employer misuse of funds).

19  Importantly, the case law is clear that unions, like the Defendants here, who cross the
20  line into commercial speech, can be held accountable for making false statements concerning an
21  employer and/or its business. The Defendants have no immunity from suit here. Defendants'
22  False Statement is, therefore, actionable and Defendants' Motion is without merit.

23  **C.     Defendants need not be competitors of Plaintiffs under the Lanham Act**

24  The Lanham Act authorizes suit by "any person who believes that he or she is likely to
25  be damaged" by a defendant's false advertising. 15 USC §1125(a)(1). "To invoke the Lanham
26  Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an
27  injury to a commercial interest caused by the defendant's misrepresentations." *Lexmark Int'l,
28  Inc. v. Static Control Components, Inc*, 572 U.S. ___, 134 S.Ct. 1377, 1395 (2014).

-3-

Nowhere does the Lanham Act state that a defendant must be in competition with a plaintiff to have standing to assert a claim for false advertising. The phrase "unfair competition," as used in the Lanham Act, is "concerned with injuries to business reputation and future sales" and not directed at competitors. *Lexmark, supra*, 134 S.Ct. at 1392. *See also Camel Hair and Cashmere Inst. of Am., Inc.* v. *Associated Dry Goods Corp.*, 799 F. 2d 6, 7–8, 11–12 (1st Cir. 1986); *PPX Enterprises, Inc.* v. *Audiofidelity, Inc.*, 746 F. 2d 120, 122, 125 (2d Cir. 1984) (damage to reputation actionable under the Lanham Act).

Nevertheless, Defendants rely on the wrong, outdated test for determining standing to assert a false advertising claim under the Lanham Act. Defendants argue that Plaintiffs must compete with Defendants in order to have standing to assert a false advertising claim under the Lanham Act. (*See* Dkt. 15, Attachment 1, Memorandum in Support of Defendants' Motion to Dismiss Complaint ("Def.'s Brief") at 5-6.). However, the United States Supreme Court eliminated the competitor standing requirement in the *Lexmark* case, and in doing so expressly overturned the competitor test proffered by the Defendants.[1]

In *Lexmark*, the United States Supreme Court held that "a rule categorically prohibiting all suits by non-competitors would read too much into the [Lanham] Act" and it would be "a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, [that] it can protect *only* the false-advertiser's direct competitors." 134 S.Ct. at 1392 (emphasis added). To pursue a claim for false advertising under the Lanham Act, a plaintiff need only plead "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Id.* at 1390, 1395.

Here, Defendants' Motion must be denied because Plaintiffs allege both required elements, namely, that Defendants' misrepresentations contained in the False Statement caused injury to the Hotel's business reputation. (Complaint, ¶¶ 13-26.) .

**D.    Defendants engaged in actionable commercial advertising**

In an attempt to skirt liability for the False Statement, Defendants also argue that a

---

[1] The elimination of the competitive standing requirement by the *Lexmark* decision eliminates the "commercial competition with Plaintiff" element in the test for determining what is "commercial advertising" under the Lanham Act. *See* Sections D 1, *infra.*

union can *never* be engaged in commercial speech, and therefore for false advertising. In taking this position, Defendants have misstated the test for determining what is "commercial advertising" under the Lanham Act, and have improperly characterized how courts have found unions to engage in commercial speech--as one of the elements of the "commercial advertising" test.

### 1. Defendants misstate the test for commercial advertising

The Ninth Circuit has adopted a four factor test to determine whether a misrepresentation constitutes "commercial advertising or promotion" for false advertising purposes under Section 43(a)(1)(B) of the Lanham Act:

> In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classic advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Newcal Indust. v. Ikon Office Solutions*, 513 F.3d 1038, 1054 (9th Cir. 2008) (*citing Coastal Abstract Serv., Inc. v. First Am. Tit. Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999)). Defendants' inexplicably cut short the relevant quote from *Newcal Industries*, **entirely omitting the fourth element of the test!** (*Compare* Def.'s Brief at 6).

### 2. Defendants' case law demonstrates unions engage in commercial speech

The first element of the *Newcal* test involves determining whether commercial speech is involved. *Newcal Indust., supra* at 1054. Defendants have ignored the test that the United States Supreme Court adopted to analyze whether a statement constitutes commercial speech (*see* Section D 3 *infra*), and instead claim that a union can never engage in commercial speech. However, Defendants' own case law contradicts its claim. The United States Supreme Court clearly stated in *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and Construction Trades Council*, "[w]e do not suggest that communications by labor unions are never of the

1 commercial speech variety." 485 U.S. 568, 576 (1988). *Sodexho USA, Inc. v. Hotel &
2 Restaurant Employees and Bartenders Union Local 217*, 989 F. Supp. 169, 171 (D. Conn
3 1997), heavily relied on by Defendants, acknowledged the validity of this ruling, by quoting
4 this very point.

5 When a union's speech goes beyond discussing union activities, such as extolling the
6 benefits of union representation or the dangers of inadequate wages on the economy, and
7 instead attempt to influence consumer choice of goods or services, such speech crosses the line
8 into actionable commercial speech. *See, e.g., Nat'l Servs. Group, Inc., v. Painting Decorating
9 Contractors of Am., Inc.*, No. 06-563, 2006 WL 2035465 at *4-6 (C.D. Cal July 18, 2006)
10 (finding Lanham Act false advertising violation and enjoining trade association from
11 disseminating an article through its web site that made false and deceptively misleading
12 statements about the plaintiff's business model, legitimacy and professionalism)[2]; *Proctor &
13 Gamble Co. v. Haugen,* 222 F.3d 1262, 1272 (10th Cir. 2000) (holding dissemination of rumor
14 that Proctor & Gamble is a corporate agent of Satan was actionable false advertising under the
15 Lanham Act).

16 Defendants' reliance on *Sodexho*, *supra*, to support their claim that Defendants were not
17 engaged in commercial speech is misplaced. The communications at issue in *Sodexho* were
18 solely related to a labor dispute. There, the union was alleged to have circulated false and/or
19 deceptively misleading information relating to "Sodexho's business relations, labor practices,
20 employer-employee relations and/or contracts between it and its employees." *Sodexho USA*,
21 989 F. Supp. at 170.

22 In *Sodexho*, the union stayed within the bounds of protected, noncommercial speech.
23 That is not the case here. Defendants have not limited their speech to the labor dispute and
24 Plaintiffs' relations with its employees. Instead, Defendants crossed the line into commercial
25 speech, spreading a falsehood for the purpose of attacking Plaintiffs' business reputation and
26 attempting to influence actual and potential customers of the Hotel to refrain from patronizing
27 the Hotel.

---

28 [2] A copy of this decision is attached hereto as Exhibit A.

Even where the speech at issue is mixed, containing both union-related speech and commercial speech, the commercial speech component is actionable. For example, in *Proctor & Gamble*, *supra*, the court was faced with a communication that contained both noncommercial and commercial elements. 222 F.3d at 1272. The court found that the message "unambiguously urges recipients to eschew purchasing P&G products," and therefore the finding that "the subject message constituted commercial speech for purposes of liability under the Lanham Act is unavoidable." *Id.* at 1275, 1276; *see also Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67-68 (1983) (distinguishing between noncommercial and commercial speech found in pamphlets). Similarly, in *National Services Group, Inc.*, the court analyzed three separate statements, ultimately finding that false statements on a website impugning plaintiff's business model, legitimacy and professionalism crossed the line into commercial speech and constituted false advertising in violation of the Lanham Act. 2006 WL 2035465 at *4-6. Again, in this case the False Statement urges recipients not to patronize the Hotel.

### 3. The False Statement is commercial speech

The United States Supreme Court has utilized a three factor test to determine whether a communication constitutes actionable commercial speech: 1) whether the communication is in an advertising format; 2) whether the communication refers to a product; and 3) whether there was commercial motivation for disseminating the communication. *Bolger, supra*, 463 U.S. at 67 (concluding, based on the combination of the three factors that there was "strong support" for characterizing pamphlets as commercial speech). In applying this test, not all factors need to be present for speech to be treated as commercial advertising. *New.Net, Inc. v. Lavasoft,* 356 F. Supp. 2d 1090, 1111 (C.D. Cal. 2004) (*citing Bolger*, *supra*, 463 U.S. at 66-68).

Under the test articulated in *Bolger*, the False Statement is clearly commercial speech because: 1) it was disseminated via a flyer, television and the Internet--which are advertising media; 2) it referred to the Hotel; and 3) Defendants were commercially motivated to disseminate the False Statement. *Bolger, supra*, 463 U.S. at 66-68.

### 4. The remaining *Newcal* factors demonstrate that the False Statement constitutes commercial advertising

The remaining *Newcal* factors strongly support a finding that the False Statement was disseminated through commercial advertising. The False Statement was clearly disseminated to influence actual and potential customers to refrain from patronizing the Hotel, and was disseminated in Las Vegas, through Vegas PBS and the Internet to actual or potential customers. Therefore, under the *Newcal* test, Plaintiffs have sufficiently alleged a false advertising claim. *Newcal Indust., supra*, 513 F.3d at 1054 (reversing dismissal of false advertising claim, holding that plaintiff "must be given an opportunity to prove that the alleged statements were made in commercial advertising"); *see also Coastal Abstract Serv., supra*, 173 F. 3d at 734.[3]

The Defendants' False Statement has absolutely nothing to do with the working conditions at the Hotel or any other arguably protected union speech. Rather, it is irrefutably apparent that the False Statement is targeted towards the Hotel's reputation. Mr. Trump's alleged choice not to stay at the Hotel (although false) implies that the Hotel is not good enough for Mr. Trump. Defendants' publication and distribution of the False Statement as the headline of a flyer, on a television program and on the Internet were clearly all commercial activities designed to harm Plaintiffs' reputation as a luxury hotel and influence consumers not to patronize the Hotel. As such, Defendants' statements constitute actionable commercial advertising.

Even assuming, *arguendo,* there is any question as to whether the speech is not protected, that question is a question of fact that cannot be decided on a motion to dismiss. *Newcal Indust.*, *supra*, 513 F. 3d at 1038. Accordingly, it would be error to dismiss this case without giving Plaintiffs "an opportunity to prove that the alleged statements were made in commercial advertising." *Id.* at 1054.

---

[3] Since the *Lexmark* case eliminated competitive standing, it is unlikely that the second factor of this test-- that the statement be made by a defendant who is in commercial competition with plaintiff--still applies.

### E. The effect caused by the False Statement is a question of fact

Defendants claim that the False Statement does not contain any factual misrepresentation regarding the Hotel. (Def.'s Brief at 8-9). Defendants' claim is totally undermined by the reality that Defendants have admitted that the False Statement is, in fact, false (Complaint, ¶18). In any event, the commercial effect the False Statement has on individuals perceiving the communication is a question of fact which should not be resolved on a motion to dismiss.

To demonstrate falsity within the meaning of the Lanham Act, Plaintiffs may show that the statement is either literally false on its face or by necessary implication. *Southland Sod Farms v. Stover Seed Co.*, 108 F. 3d 1134, 1139 (9th Cir. 1997). For the purposes of this motion, the False Statement is literally false, but ultimately the determination of falsity is a question of fact that Defendants' own authority holds should not be resolved on a motion to dismiss. *Newcal Indust.*, *supra*, 513 F.3d at 1052-1054.

## II. Defendants Concede Plaintiffs Have Alleged a Deceptive Trade Practices Claim

Plaintiffs have alleged that Defendants disparaged Plaintiffs' services through a false or misleading representation of fact and/or knowingly made a false representation as to Mr. Trump's lack of approval of, or association with, Plaintiffs' services. (*See* Complaint, ¶13-18, 27-30). Defendants concede that these allegations are sufficient to state a claim under the Nevada Deceptive Trade Practices Act. (N.R.S. §§ 598.0915 2, 3 and 8).

### CONCLUSION

Defendants went beyond protected speech and crossed into commercial speech when they published and disseminated the False Statement through a flyer, a public television show and on the Internet--all for the purpose of damaging the Hotel's reputation. Defendants also cited a test for standing that has been overruled by the United States Supreme Court, misstated the test for determining what constitutes "commercial advertising" under the Lanham Act and mischaracterized the law regarding how the Lanham Act applies to Defendants' clearly actionable commercial speech.

Plaintiffs have adequately alleged claims of false advertising under the Lanham Act and

deceptive practices under the Nevada Deceptive Trade Practices Act. Plaintiffs must be permitted the opportunity to prove that the False Statement was false advertising that damaged Plaintiffs' business reputation.

Accordingly, Defendants' Motion should be denied.

Dated: this 17th day of December, 2015.

**LEWIS ROCA ROTHGERBER LLP**

By: /s/ Jonathan W. Fountain
JONATHAN W. FOUNTAIN
Nevada Bar No. 10351
JFountain@LRRlaw.com
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169
Telephone: (702) 949-8200
Facsimile: (702) 949-8398

**SEYFARTH SHAW LLP**

BART A. LAZAR
(Admitted *pro hac vice*)
blazar@seyfarth.com
131 S. Dearborn
Suite 2400
Chicago, Illinois 60603
Telephone: (312) 460-5986
Facsimile:  (312) 460-7986

*Attorneys for Plaintiffs*
*Trump Ruffin Commercial LLC and*
*Trump Ruffin Tower I LLC*

**CERTIFICATE OF SERVICE**

I, Jonathan W. Fountain, hereby certify that on December 17, 2015, I filed a copy of the foregoing paper entitled, Plaintiff's Opposition to Defendants' Motion to Dismiss, with the Clerk of the Court via the Court's CM/ECF system, which will send electronic notice to the following CM/ECF participants:

Kristin L. Martin
klm@dcbsf.com
Paul L. More
pmore@dcbsf.com
McCRACKEN, STEMERMAN & HOLSBERRY
1630 S. Commerce Street, Suite A-1
Las Vegas, NV 89102

I hereby further certify that there are no non-CM/ECF participants who have appeared in this action upon whom service of a paper copy is required.

Dated: this 17th day of December, 2015.

          /s/ Jonathan W. Fountain
An employee of Lewis Roca Rothgerber LLP