RICHARD G. McCRACKEN, SBN 2748
KRISTIN L. MARTIN, SBN 7807
PAUL L. MORE, SBN 9628
McCRACKEN, STEMERMAN & HOLSBERRY
1630 S. Commerce Street, Suite A-1
Las Vegas, Nevada 89102
Tel. No.: (702) 386-5107
Fax No.: (702) 386-5132
E-mail: rmccracken@dcbsf.com
klm@dcbsf.com
pmore@dcbsf.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

TRUMP RUFFIN COMMERCIAL LLC, and TRUMP RUFFIN TOWER I LLC,

Plaintiff,

vs.

LOCAL JOINT EXECUTIVE BOARD LAS VEGAS, CULINARY WORKERS UNION LOCAL 226, and BARTENDERS UNION LOCAL 165,

Defendants.

CASE NO. 2:15-cv-01984-GMN-GWF

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**Table of Contents**

Introduction ........................................................................................................ 1

A. The allegedly false statement about Plaintiffs' product – that the Trump Hotel is not "good enough" for Donald Trump – is too general and subjective to support a Lanham Act claim ........................................................................................ 1

B. The Complaint allegations do not satisfy the *Coastal Abstract* test for "commercial advertising or promotion" ........................................................................ 3

1. There is no allegation in the Complaint that the Flyer was for the purpose of influencing consumers to purchase the Union's goods or services ........................ 3

2. Plaintiffs and the Unions are not competitors ........................................................ 3

3. The Flyer is not commercial speech ...................................................................... 5

C. Plaintiffs offer no rebuttal argument against dismissing the state law claim .................... 11

Conclusion ........................................................................................................ 11

**Introduction**

The Unions' opening brief offered three discrete reasons why the Lanham Act claim for false advertising should be dismissed: (a) Plaintiffs lacked standing to pursue the Lanham Act claim against the Unions because the Unions' are not Plaintiffs' commercial competitors; (b) the allegedly false statement was not made in "commercial advertising or promotion"; and (c) Plaintiffs failed to allege that the Unions misrepresented a specific characteristic of the Trump Hotel's services. Plaintiffs correctly responded that in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014), the Supreme Court rejected the Ninth Circuit's rule that Lanham Act standing is limited to commercial competitors. The Unions withdraw that argument. But the Lanham Act claim should still be dismissed for either or both of the two other reasons offered in the Unions' opening brief. We address Plaintiffs' responses to these arguments as follows.

**A. The allegedly false statement about Plaintiffs' product – that the Trump Hotel is not "good enough" for Donald Trump – is too general and subjective to support a Lanham Act claim**

It is black-letter law in the Ninth Circuit that a general or subjective statement about a product cannot support a false advertising claim because such statements are "extremely unlikely to induce consumer reliance." *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008); *see also Coastal Abstract Svc., Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999); *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Service Inc.*, 911 F.2d 242, 245 (9th Cir. 1990). Plaintiffs do not dispute this proposition. It is also beyond dispute that the Complaint does not allege the Unions made any specific and objective statement about the Trump Hotel's services. The only allegation in the Complaint about what the Unions' "communicated to the public about the quality of the accommodations of Trump Hotel Las Vegas" is an inference that the hotel is "'not good enough for Mr. Trump." *See* Complaint, ¶ 15. One cannot imagine a more general and subjective statement.

//

Plaintiffs ignore this fundamental problem and focus entirely on the statement about where Trump stayed. But the threshold element of a Lanham Act false advertising claim is "a false statement either about the plaintiff's or its own product." *Newcal Industries*, 513 F.3d at 1052. The statute requires a misrepresentation about "the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). The statement about where Trump stayed is not a statement about the nature, characteristics or quality of Plaintiffs' product so it cannot support the Lanham Act claim.

Plaintiffs appear to have recognized as much because when they drafted the Complaint because they did not stop with the allegation that the statement about where Trump stayed was false. Instead, Plaintiffs alleged that by making this statement, the Unions implied that the Trump Hotel is "not good enough." Complaint, ¶ 15. If the Unions had distributed a leaflet that said directly, "The Trump Hotel is not good enough for Trump," there would be no Lanham Act liability because the statement is too general and subjective to constitute a false statement. The same is true here, even though, according to the Complaint, the Unions only implied that the Trump Hotel was not "good enough" for Trump.

Plaintiffs' only other response is to assert that the truth or falsity of a statement and its effect on individuals perceiving the communication should not be resolved on a motion to dismiss. Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Opp. Br."), at 9. But the Ninth Circuit is clearly supports dismissal on a Rule 12(b)(6) motion when the allegedly false statement is too subjective or general to support a claim. *Newcal Industries*, 513 F.3d at 1053 ("[T]he determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion."); *Cook, Perkiss and Liehe*, 911 F.2d at 245 ("[W]e are willing to accept as true Cook's allegation that the advertisement implies that NCC offers the same collection services as lawyers at a lower price. However, we may still determine as a matter of law whether this alleged misrepresentation is a statement of fact, actionable under the Lanham Act, or mere puffery.");

*see also Coastal Abstract Svc*, 173 F.3d at 731 (stating that allegedly false statement that business was "too small" could not give rise to Lanham Act liability "[a]s a matter of law").

**B. The Complaint allegations do not satisfy the *Coastal Abstract* test for "commercial advertising or promotion"**

The test for whether a publication constitutes "commercial advertising or promotion" contains four elements, all of which must be alleged. *Newcal Industries*, 513 F.3d at 1054; *Coastal Abstract*, 173 F.3d at 735. We refer to this as the *Coastal Abstract* test.

In the motion to dismiss, the Unions argued that Plaintiffs failed to allege facts to establish the first three of these elements: (1) commercial speech; (2) by the defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. Plaintiffs' seem to think it is significant that the Unions' brief did not recite the fourth element because they emphasize that fact with bold type and an exclamation point. *See* Opp. Br., at 5. The only reason that Unions did not recite the *Coastal Abstract* test's fourth element is because they did not argue that that element was missing from the Complaint allegations. It is simply irrelevant to the issues raised in the motion to dismiss. We address Plaintiffs' arguments about the remaining three elements in reverse order.

**1. There is no allegation in the Complaint that the Flyer was for the purpose of influencing consumers to purchase the Union's goods or services**

The third element of the *Coastal Abstract* test is that the speech was "for the purpose of influencing consumers to buy defendant's goods or services." In the opening brief, the Unions pointed out that there is no allegation in the Complaint that the Unions have any goods or services for sale. Plaintiffs ignore this argument, and do not offer any rebuttal to it. For this reason alone, the Court can find that Plaintiffs have not alleged that the misrepresentation occurred "in commercial advertising or promotion."

**2. Plaintiffs and the Unions are not competitors**

The second element of the *Coastal Abstract* test is that the speech was "by a defendant who is in commercial competition with the plaintiff." In their opening brief, the Unions pointed

out that there is no allegation that they are Plaintiffs' commercial competitors. Plaintiffs' response to this argument appears in a footnote, where they assert only that it is "unlikely" that this element "still applies" because "the *Lexmark* case eliminated competitive standing." Opp. Br., at 8 n.3

In *Lexmark*, the Supreme Court granted certiorari on the question of "prudential standing" under the Lanham Act, 134 S.Ct. at 1386; and framed the issue as "whether [the plaintiff] falls within the class of plaintiffs whom Congress has authorized to sue under § 1125(a)." *Id*. at 1387. The Court held that the "zone-of-interests test is . . . an appropriate tool for determining who may invoke the cause of action in § 1125(a), *id*. at 1388-89; and "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id*. at 1390. In *Lexmark*, the Court demonstrated why direct competition was unnecessary with the following hypothetical:

> Consider two rival carmakers who purchase airbags for their cars from different third-party manufacturers. If the first carmaker, hoping to divert sales from the second, falsely proclaims that the airbags used by the second carmakers are defective, both the second carmaker and its airbag supplier may suffer reputational injury, and their sales may decline as a result.

*Id*. at 1394.

The *Lexmark* rule about standing – whether a plaintiff is among the class of people who have a right to sue – says nothing about what substantive facts a plaintiff who makes it through the courthouse door must allege to state a claim for relief. At the time the Court decided *Lexmark*, five circuits had adopted the *Coastal Abstract* test for what constitutes "commercial advertising or promotion." *See Grubbs v. Sheakley Group, Inc.*, __ F.3d __, 2015 WL 7964109, at *9 n.4 (6th Cir. Dec. 7, 2015) (citing cases). The Court in *Lexmark* expressly refrained from addressing that test:

> Lexmark contends that Static Control's allegations failed to describe "commercial advertising or promotion" within the meaning of 15 U.S.C. § 1125(a)(1)(B). That question is not before us, and we express no view on it.

134 S.Ct. at 1385 n.1.

The *Coastal Abstract* test remains the law in the Ninth Circuit. The Ninth Circuit has not repudiated the competition requirement[1], and since *Lexmark* was decided at least one district court has dismissed a complaint for failure to allege commercial competition between the parties. *See, e.g., New Show Studios LLC v. Needle*, 2014 WL 2988271, at *16 (C.D. Cal. June 30, 2014) (dismissing Lanham Act claim because there was no allegation that misrepresentation was made by a defendant in commercial competition with plaintiff); *see also Goodman v. Does*, 2014 WL 1310310, at *5-6 n.3 & 7 (E.D.N.C. March 28, 2014) (applying test but acknowledging that second factor "is somewhat in question").

**3. The Flyer is not commercial speech**

The first element of the *Coastal Abstract* test is "commercial speech." Plaintiffs spend the bulk of their answering brief arguing that the Flyer constitutes commercial speech. This argument should be rejected because Plaintiffs misrepresent what constitutes commercial speech.

**a. The Flyer is not commercial speech because it does not propose a commercial transaction**

In the First Amendment context, "speech which does no more than propose a commercial transaction" has been deemed "the core notion of commercial speech." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993) (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)).[2] The Court has described this as "*the test* for identifying commercial

[1] No other courts of appeals have relied on *Lexmark* to abandon *Coastal Abstract* test. In a case decided this month, the Sixth Circuit adopted the Second Circuit's test for "commercial advertising or promotion" which does not include the commercial competition element. *Grubbs*, 2015 WL 7964109, at *11-12. Importantly, the Sixth Circuit did not point to *Lexmark* as a reason for declining to require commercial competition between the parties, which suggests that that court understood *Lexmark*'s holding about standing to be distinct from what is required to establish "commercial advertising or promotion."

[2] Under the First Amendment, "commercial speech [enjoys] a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression." *Board of Trustees of State Univ. of N. Y. v. Fox,* 492 U.S. 469, 477 (1989). While "some false and misleading statements are entitled to First Amendment protection in the political

speech." *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 473-74 (1989) (emphasis added). As recently as the 2014 term, the Court reiterated this definition of commercial speech: "Our precedents define commercial speech as 'speech that does no more than propose a commercial transaction,' and the union speech in question in this case does much more than that." *Harris v. Quinn*, 134 SCt 2618, 2639 (2014) (internal citations omitted). The Ninth Circuit has cited this "core notion" of commercial speech when deciding, in the Lanham Act context, whether speech is commercial. *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003).[3]

The Flyer at issue here does not propose any commercial transaction. It identifies the hotel where Trump stayed when he visited Las Vegas as a union hotel, compares the benefits of working at a union hotel to working at the Trump Hotel, and urges workers to participate in union activities. Nothing in the leaflet can even remotely be characterized as a proposal that consumers book a room at a particular hotel. This is fatal to Plaintiffs' claim that the Flyer is commercial speech.

**b. The *Bolger* test does not apply because the Flyer does not propose any commercial transaction**

Plaintiffs ignore the core notion of commercial speech and instead rely exclusively on the factors used to identify commercial speech in *Bolger v. Youngs Drug Products Corp*. Plaintiffs misrepresent the holding in *Bolger* and fail to explain the limited context in which the rule applies.

---

realm, the special character of commercial expression justifies restrictions on misleading speech that would not be tolerated elsewhere" owing to "commercial speech's potential to mislead." *Rice v. Coors Brewing Co.*, 514 U.S. 476, 494 (1995) (concurring opinion of Justice Stevens).

[3] Other courts have suggested that the Lanham Act incorporates a narrower definition of commercial speech than exists under the First Amendment doctrine. *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56-58 (2d Cir. 2002) ("Although the Lanham Act encompasses more than the traditional advertising campaign, the language of the Act cannot be stretched to encompass all commercial speech."); *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803 (7th Cir. 2001) (stating that the Lanham Act draws lines between varieties of commercial speech).

*Bolger* involved informational pamphlets distributed by a pharmaceutical company that discussed the desirability and availability of prophylactics in general and the company's products in particular. 463 U.S. at 62. While the pamphlets proposed a commercial transaction, they could "not be characterized *merely* as proposals to engage in commercial transactions." *Id*. at 66 (emphasis added). Thus, the Court was faced with deciding whether communications that combine the core notion of commercial speech with a discussion of public issues can be regulated under the First Amendment's commercial speech doctrine. *Id*. at 67-68. Three attributes led the Court to conclude that the pamphlets were properly categorized as commercial speech: the pamphlets were admittedly advertisements, they referenced a specific product, and the pharmaceutical company had an economic motivation for distributing the pamphlets. *Id*. at 66-67. The Court later described its analytical exercise in *Bolger* as determining "whether the principle type of expression at issue is commercial speech." *Board of Trustees*, 492 U.S. at 473.

*Bolger* is inapplicable here. The problem for the Court in *Bolger* was ferreting out commercial speech when it is cloaked with a discussion of public issues. As a policy rationale for its decision, the Court explained that "[a]dvertisers should not be permitted to immunize false or misleading product information from government regulation simply by including references to public issues." *Id*. at 68. This case presents the reverse problem. The Unions did not include a reference to the labor issues at the Trump Hotel as a way to immunize an allegedly false statement about where Trump stayed. The Unions distributed a leaflet about the labor dispute at the Trump Hotel, and in that context, used a statement about the hotel where Trump stayed to introduce a contrast between union and nonunion hotels. Plaintiffs are attempting to squeeze a leaflet that discusses a labor dispute in an attention-grabbing way – highlighting a presidential candidate's hypocrisy – into a narrow branch of the commercial speech doctrine that does not apply here.

**c. Criticism of a product is not necessarily commercial speech**

The thrust of Plaintiffs' argument for why the Flyer is commercial speech is that (according to Plaintiffs' reading) it disparages the Trump Hotel's accommodations as inferior.

But all criticism of a business's product is not commercial speech. Speech that denigrates another business's product without proposing that the audience purchase a different product is not commercial speech. *See, e.g.*, *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1017 (9th Cir. 2004) ("Negative commentary about Nissan Motor does more than propose a commercial transaction and is, therefore, non-commercial."); *SB Diversified Prods., Inc. v. Murchison*, 2014 WL 3894353, at *7 (S.D. Cal. July 28, 2014) (dismissing Lanham Act complaint because "defendant's purported statements simply criticize plaintiff's product but do not propose a commercial transaction, and plaintiff offers no other facts in its FAC establishing commercial speech"); *Goodman v. Does*, 2014 WL 1310310, at *5-6 (E.D.N.C. March 28, 2014) (dismissing Lanham Act claim based on website containing critical consumer reviews because no allegation that defendants have "a commercial interest in disparaging [plaintiff's] reputation"); *Wojnarowicz v. Am. Family Ass'n*, 745 F.Supp. 130, 141-42 (S.D.N.Y. 1990) ("[The Lanham Act] has never been applied to stifle criticism of the goods or services of another by one, such as a consumer advocate, who is not engaged in marketing or promoting a competitive product or service.")

**d. A union does not engage in commercial speech by urging consumers not to patronize a disfavored business**

Plaintiffs misrepresent the Unions' argument when they assert that the Unions "claim that a union can never engage in commercial speech." Opp. Br., at 5. The Unions did not make that blanket claim in their opening brief. What the brief states is that "union speech in furtherance of its organizing objectives is not commercial speech." Defendants' Brief in Support of Motion to Dismiss, at 13.[4]

---

[4] Plaintiffs similarly misrepresent the Unions' argument when they claim that the Unions' contend that "they (and all unions) are immune from liability for making false and/or deceptively misleading statements intended to hurt a business' commercial interest." Opp. Br., at 2. Unions can be held liable for defamation if the plaintiff proves that the union spoke with knowledge of the statement's falsity or reckless disregard for the truth. *Linn v. Plant Guard Workers*, 353 U.S. 53, 61 (1966). "[A]ny publication made during the course of union organizing efforts, which is arguably relevant to that organizational activity, is entitled to the protection of *Linn*." *Letter Carriers v. Austin*, 418 U.S. 264, 279 (1974). All but one of the cases that Plaintiffs cite on

As Plaintiffs point out, *DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568 (1988) left open the possibility that unions might at times engage in commercial speech. *Id.* at 576. This is an unremarkable observation given the range of topics a union might discuss. In *Sodexho USA, Inc. v. Hotel & Restaurant Employees and Bartenders Union Local 217*, 989 F.Supp. 169 (D. Conn. 1997), the court gave an example of union speech of a commercial nature: "[I]f the plaintiff had been a union competing to organize the same group of workers, and the defendants' statements disparaged the 'service' that the plaintiff provided, such conduct might be actionable under the Lanham Act." *Id.* at 172 n.2. But here, Plaintiffs advocate that the Court adopt a very different rule. They contend that when unions "attempt to influence consumer choice of goods or services," they engage in commercial speech. Opp. Br., at 6. Plaintiffs do not cite any authority for that blanket proposition[5], and *DeBartolo* demonstrates that it is not the law.

---

pages 2 and 3 of their brief involve defamation claims that apply this standard. *See San Antonio Community Hospital v. So. California Dist. Council of Carpenters*, 125 F.3d 1230, 1235 (9th Cir. 1997) ("We thus must decide whether the Hospital satisfactorily demonstrated a reasonable chance of meeting this standard at trial, commonly known as the *New York Times* 'actual malice' standard. We hold that it did."); *Intercity Maintenance Co. v. Local 254 SEIU*, 241 F.3d 82, 89-90 (1st Cir. 2001) (applying *Linn* standard to defamation claim against union); *Mercy Health Servs. v. 1199 Health & Human Serv. Employees Union*, 888 F.Supp. 828, 836 (W.D. Mich. 1995) (same); *Shepard v. Courtoise*, 115 F.Supp.2d 1142, 1146 (E.D. Mo. 2000) (same); *Batson v. Shiflett*, A.2d 1191, 1204-05, 1210 (Md. 1992) (same). The final case, *Briggs & Stratton Corp. v. Nat'l Catholic Reporter Pub'g Co.*, 978 F.Supp. 1195, 1198-99 (E.D. Wisc. 1997), acknowledged the *Linn* standard but declined to apply it because defendant not a labor union. None of these cases involved a determination whether the union's publication was commercial speech.

[5] The cases that Plaintiffs cite do not support this proposition for two reasons. First, neither case involved speech by unions. Second, in both cases, the key fact was that the defendant not only criticized the plaintiff's product but also touted its own product. *National Servs. Group, Inc. v. Painting Decorating Contractors of Am., Inc.*, 2006 WL 2035465, at *5-6 (C.D. Cal. July 18, 2006) (trade association's article that disparaged competing painters and praised its own members' services held to be commercial speech, but another article that criticized the competing painters without commenting favorably on its own members held not to be commercial speech); *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1275 (10th Cir. 2000) ("[W]e reject appellees' assertion that the subject message does not promote 'commercial transactions.' On the contrary, the message unambiguously urges recipients to eschew purchasing P&G products in favor of Amway products. While *economic motivation or reference*

In *DeBartolo*, the union distributed leaflets calling for a consumer boycott of stores in a shopping mall. 485 U.S. at 570. Asking consumers to boycott a business is an attempt to influence the consumers' choice of goods and services, but the Court decided that the union's leaflet was not commercial speech. *Id*. at 576. Similarly, in *Sodexho USA*, the union was alleged to have "distributed false or misleading leaflets and letters to prospective customers" which caused one customer not to contract with Sodexho, 989 F.Supp. at 171; but that was not deemed to be commercial speech. It is not uncommon for unions and others to ask the public to support its goals by boycotting the business with which the union has a dispute. *See, e.g., NAACP v. Claiborne Hardware*, 458 U.S. 886, 909 (1982) (boycott called by civil rights organizations protected by First Amendment); *NLRB v. Fruit & Vegetable Packers & Warehousemen Local 760*, 377 U.S. 58, 63 (1964) (union picketing asking grocery store customers not to buy brand of fruit, protected). Plaintiffs cannot cite a single case in which a union's advocacy of a consumer boycott was deemed commercial speech.

Plaintiffs also suggest a distinction between union speech that asks consumers not to purchase products because of the wages and working conditions and union speech that seeks to persuade consumers not to purchase a product based on a concern unrelated to wages and working conditions. *See* Opp. Br., at 6. Courts have rejected that distinction. *See, e.g., Sheet Metal Workers International Association Local 15 v. NLRB*, 491 F.3d 429, 437 (D.C. Cir. 2007) ("mock funeral" staged by union outside hospital and related leaflets about malpractice suits distributed protected by First Amendment); *Sutter Health v. UNITE HERE*, 186 Cal.App.4th 1193, 1210 (2010) (in defamation case, Linn standard applies to union speech even if the speech addresses a topic other than wages, hours or working conditions). *Cf. Virginia Pharmacy Bd. v. Virginia Consumer Council*, 425 U.S. 748, 762-63 (1976) ("We know of no requirement that, in order to avail themselves of First Amendment protection, the parties to a labor dispute need

---

*to a specific brand name and products, when viewed in isolation, might not render a message commercial speech*, we conclude that those factors taken together with the instant message's promotion of Amway products at the expense of P&G products support the characterization of the subject message as commercial speech.") (emphasis added).

address themselves to the merits of unionism in general or to any subject beyond their immediate dispute.”).

**C. Plaintiffs offer no rebuttal argument against dismissing the state law claim**

In the opening brief, the Unions argued that the Court should either dismiss the Nevada Deceptive Trade Practices claim for failure to allege facts sufficient to state claim; or decline to exercise supplemental jurisdiction. Plaintiffs ignore these arguments entirely. Without any explanation, Plaintiffs simply announce that the Unions conceded that the complaint allegations are sufficient to state a claim. Ans, Br., at 9. This makes no sense.

**Conclusion**

For all of the foregoing reasons, the Complaint should be dismissed in its entirety.

DATE: December 22, 2015

McCRACKEN STEMERMAN & HOLSBERRY

/s/ Kristin L. Martin
RICHARD G. McCRACKEN, SBN 2748
KRISTIN L. MARTIN, SBN 7807
PAUL L. MORE, SBN 9628
1630 S. Commerce Street, Suite A-1
Las Vegas, Nevada 89102

*Attorneys for Defendants*